STATE of Missouri, Respondent,

v.

Franklin ENDICOTT, Appellant.

Franklin ENDICOTT, Appellant,

v.

STATE of Missouri, Respondent.

Nos. WD 48904, WD 48961.

Missouri Court of Appeals,
Western District.

Aug. 23, 1994.

Ellen H. Flottman, Office of the State Public Defender, Columbia, for appellant.

Philip M. Koppe, Asst. Atty. Gen., Kansas City, for respondent.

Before FENNER, C.J., P.J., and LOWENSTEIN and SPINDEN, JJ.

FENNER, Chief Judge.

Appellant, Franklin Endicott, appeals his convictions following trial by jury for assault in the second degree and armed criminal action.[1]

The record reflects that in December of 1990, Endicott was an inmate at the Moberly Correction Center. On December 25, 1990, Endicott was in a fight with another inmate, Kelvin Perkins. Two corrections officers, Charles Harris and Christopher Morrison, attempted to intercede and break up the fight.

As the officers approached, Endicott kicked Officer Morrison in the face. Officer Morrison fell to the ground and Endicott kicked him a couple of more times. Endicott then beat on Officer Morrison with his hands and appeared to have something in his right hand. Endicott also struck Officer Harris on the head and shoulder.

Officer Morrison suffered two puncture wounds to his back. The other inmate, Kelvin Perkins, was treated for three stab wounds, two to his left arm, and one which

---

1. Endicott also appeals the denial of his Rule 29.15 motion. However, Endicott has not briefed any issue relating to his Rule 29.15 mo-tion. Said motion is therefore considered abandoned and dismissed. *State v. Molinett,* 876 S.W.2d 806, 808 (Mo.App.1994).

penetrated his chest and caused the collapse of his left lung.

On appeal, Endicott argues first that the trial court erred by causing him to be shackled before the jury. Endicott argues that the record does not reflect that the court was justified in restraining him in court and further that the court considered improper ex parte communications in determining that he should be restrained in court.

While a criminal defendant has a qualified right to remain free of physical restraints while attending his own trial, the trial judge bears the responsibility for the conduct of the trial, the safety of all persons in the courtroom, and the prevention of escape. *State v. Jimerson*, 820 S.W.2d 500, 503 (Mo.App.1991). If the trial judge finds that "good reason" or "exceptional circumstances" exist, he may require the physical restraint of the defendant. *Id.* In making such a determination, the judge has considerable, but not unlimited, discretion in determining the propriety of physically restraining the accused. *Id.* Each case should be decided on its particular facts. *Id.*

Where, as here, it is alleged that there was an abuse of discretion by the trial judge in ordering the restraint of the defendant, the defendant bears a dual burden of proof: First, the defendant must show that there was an abuse of discretion by the trial judge when the decision to shackle the defendant was made, and second, the defendant also must establish that the court's actions prejudiced the defendant. *Id.* at 502. Unless the record clearly shows an abuse of discretion and a real probability of injury to the complaining party, an appellate court will not interfere with the trial court's decision regarding the propriety of restraints. *Id.* at 502–03.

The record in the case at bar reflects that the trial court was extremely careful to assure that the jury did not observe Endicott in shackles. Endicott's arms and hands were not restrained. Only his legs were restrained and in doing so the court directed that "short restraints" be used so that they would not rattle and that the restraints be placed on him so that they would ordinarily not be visible. The court also provided that boxes be placed around the table where defendant would sit so that the jury would not observe his restraints. Furthermore, boxes were to be placed in a similar fashion around the prosecutor's table so as not to call attention to the defendant. The court advised the parties that if Endicott chose to testify, he would be allowed to enter and exit the witness stand outside the presence of the jury so that his restraints would not be noticed.

In explaining its reasons for utilizing restraints at trial, the court noted Endicott's security classification at prison, the fact that he was serving a "lengthy sentence of thirty or forty years," and that there was a letter in Endicott's file indicating that he had been involved in a prior unsuccessful escape plan. The judge noted that the courtroom was small and that his decision was based upon his concern for courtroom security. The court was also entitled to consider the nature of the charges against Endicott and the fact that he allegedly used a weapon in an altercation with another prisoner and two prison guards.

Endicott complains about the trial court's consideration of the letter which was not made part of the record and was presented to the court from the department of corrections outside of Endicott's presence. It does not appear that the letter in question was properly before the court for consideration. Nonetheless, even without the escape information contained in the letter, it cannot be said that the trial court abused its discretion or that Endicott was prejudiced by the restraints at trial.

Endicott was classified as a high security risk at prison, he was serving a lengthy sentence, the court had the opportunity to observe his physical appearance, it was represented that Endicott had assaulted another inmate and two guards with a weapon resulting in serious injury, and the court took into consideration the physical environment of the courtroom. Furthermore, due to the precautions taken by the court, the jury was not in a position to observe the restraints and Endicott was not prejudiced.

Endicott's first point is denied.

In his second point, Endicott argues that the trial court erred by allowing the State to amend the information against him prior to trial by deleting from Count IV, armed criminal action, that Endicott had committed both of the charged assaults with a dangerous instrument.

Endicott was charged with four counts as follows: Count I, assault in the second degree; Count II, assault in the second degree; Count III, offering to commit violence; and Count IV, armed criminal action. At trial, Endicott was convicted of assault in the second degree under Count I, and armed criminal action under Count IV. Endicott was found not guilty of Counts II and III.

Endicott argues that since the original information alleged under Count IV, armed criminal action, that he "committed the felonies of assault first degree charged in Counts I and II herein" with a dangerous instrument, that the subsequent amendment to Count IV was prejudicial to his defense because it "lowered the state's burden of proof." Endicott argues that the amendment to Count IV authorized conviction of armed criminal action if the jury found that he had committed either assault with a dangerous instrument.

In other words, Endicott argues that originally he could only have been convicted of armed criminal action if the jury found that he had committed both assaults with a dangerous instrument. The amendment allowed a conviction for armed criminal action if the jury found that Endicott used a dangerous instrument to commit either assault.

Rule 23.08 authorizes the amendment of an information at any time prior to verdict or finding, "if no additional or different offense is charged and if a defendant's substantial rights are not thereby prejudiced." The test of "prejudice" under Rule 23.08 is (1) whether a defense to the charge as originally made would be equally available after the amendment, and (2) whether the defendant's evidence would be equally applicable after, as well as before, the amendment. *Alexander v. State,* 864 S.W.2d 354, 358 (Mo.App.1993).

In the case at bar, Endicott represents that his defense to Count I was "that he

kicked [the corrections officer] in self-defense and did not have a knife"; his defense to Count II was that "someone else committed the offense." Endicott's defenses were not prejudiced by the amendment to the armed criminal action charge. Endicott's defenses were equally available to him after the amendment.

Endicott's argument that his defense was drastically different after the amendment because before he would only have to convince the jury that he was not guilty of one assault, is of no avail. Loss of a technical defense is not the type of prejudice referred to under Rule 23.08.

An amendment to an information is not foreclosed merely because it negates a technical defense. *Alexander v. State,* 864 S.W.2d at 358. In *Alexander,* an amendment to an information was not foreclosed merely because it negated a technical defense in regard to the name of the victim. *Id.* at 358. Similarly, in *State v. Bratton,* 779 S.W.2d 633, 634–35 (Mo.App.1989), an amendment to an information was not foreclosed merely because it negated a technical defense as to the manner in which the crime was committed. In *Bratton,* the court held that by removing unnecessary language from the information it nonetheless continued to charge the original offense and the defendant was not prejudiced. *Id.* at 635.

In the case at bar, the amendment did not change the nature of the charge or prejudice any "substantial rights" of the appellant, since it merely deleted the unnecessary allegation that the appellant had committed *both* assaults charged under Counts I and II with a deadly instrument. Since both the appellant's defenses and evidence were as available and applicable after the amendment as they were before, the trial judge did not abuse his discretion in allowing the prosecution to amend Count IV of the original information.

Endicott's second point is denied.

In his third point, Endicott argues that the trial court erred in resentencing him to two concurrent three-year sentences pursuant to his convictions of assault and armed criminal action. Endicott argues that by re-

sentencing him, the trial court increased his sentence from that originally imposed in violation of his "due process rights."[2]

Following his convictions of assault in the second degree and armed criminal action, Endicott was sentenced to consecutive three-year terms of imprisonment; the court ordered that the three-year term imposed on Count I, second degree assault, was to run consecutively to the longest sentence the appellant was then serving, and that the three-year sentence under Count IV, armed criminal action, was to run consecutively to Count I.

At the time the consecutive sentences were imposed, the trial judge observed that he believed he was required to do so by law. After realizing that the law allowed, but did not require, consecutive sentences, the court, on December 22, 1993, partially sustained the appellant's motion under Rule 29.15, and, on January 4, 1994, resentenced the appellant to two *concurrent* three-year sentences to be served consecutively with the longest sentence the appellant was then serving.

The practical effect of the court's order was to reduce Endicott's original sentence by three years. However, Endicott incorrectly argues that the resentencing order actually increased, rather than shortened, his original sentence.

The effect of the resentencing order was the opposite of what Endicott represents. Endicott's original sentence was actually reduced by the trial court. Endicott suffered no prejudice and accordingly his third point is denied.

Judgment affirmed.

All concur.

**2.** This point is raised pro se by appellant at his    request.